### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
--------------------------------x
JAMES LAWRENCE,                 :
                                :
     Plaintiff,                 :
                                :
v.                              :
                                :
TOWN OF WESTPORT,               :  Civil No. 3:22-cv-01598(AWT)
JAMES SULLIVAN, DAVID WOLFE,    :
MARK GRASSO, SERENITI DOBSON,   :
and FOTI KOSKINAS,              :
                                :
     Defendants.                :
                                :
--------------------------------x
```

### <u>RULING ON MOTION TO DISMISS</u>

Plaintiff James Lawrence ("Lawrence"), proceeding <u>pro se</u>, filed this action on December 20, 2022 against defendants Town of Westport, James Sullivan ("Sullivan"), David Wolfe ("Wolfe"), Mark Grasso ("Grasso"), Sereniti Dobson ("Dobson"), and Foti Koskinas ("Koskinas"). Koskinas is the Chief of the Westport Police Department, and the other individual defendants are Westport Police Officers.

The plaintiff filed an amended complaint on January 5, 2023 and January 9, 2023. The defendants' filed a motion for a more definite statement on March 13, 2023, which the court granted. (<u>See</u> ECF No. 24). The court directed the <u>pro se</u> plaintiff to include a separate count for each of his claims. The plaintiff

filed another amended complaint (the "Second Amended Complaint")
on November 7, 2023. (See ECF No. 36).

The Second Amended Complaint sets forth, at pages 52 to 56,
the following eight counts: First Count, a claim pursuant to 42
U.S.C. § 1983 for false arrest, malicious prosecution, and
unreasonable search and seizure, in violation of the Fourth
Amendment, against defendants Sullivan, Wolfe, Grasso, Dobson,
and Koskinas; Second Count, a claim that defendants made untrue
statements in affidavits in support of an application for arrest
and/or search warrants in violation of the Connecticut
Constitution, Article I §§ 7 and 9, against defendants Sullivan,
Wolfe, Grasso, Dobson, and Koskinas; Third Count, a claim
pursuant to 42 U.S.C. § 1983 for failure to train, supervise,
monitor, and discipline the individual defendants, in violation
of the Fourth Amendment, against defendant Town of Westport;
Fourth Count, a claim for defamation against defendant Sullivan;
Fifth Count, a claim for defamation against defendant Grasso;
Sixth Count, a claim for negligent infliction of emotional
distress against defendants Sullivan, Wolfe, Grasso, Dobson, and
Koskinas; Seventh Count, a claim for intentional infliction of
emotional distress against defendants Sullivan, Wolfe, Grasso,
Dobson, and Koskinas; and Eighth Count, a claim pursuant to
Conn. Gen. Stat. §§ 7-465 and 7-101 against defendant Town of
Westport.

The defendants have moved to dismiss all claims in the Second Amended Complaint. For the reasons set forth below the defendants' motion is being granted.

## I.   FACTUAL ALLEGATIONS

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997).

The plaintiff was arrested on March 5, 2018 (the "March 5, 2018 Arrest") pursuant to a warrant issued in reliance upon an affidavit submitted by defendant Sullivan. The warrant related to a November 5, 2017 incident at a supermarket during which the plaintiff allegedly interacted with a woman in an inappropriate manner. The plaintiff was charged with breach of peace in the second degree. In January 2020, the plaintiff was cited for a non-criminal infraction, for which he paid a $90 fine.

The plaintiff was arrested on February 6, 2019 (the "February 6, 2019 Arrest") pursuant to a warrant issued in reliance upon an affidavit submitted by defendant Grasso. The warrant related to an email the plaintiff sent to his tenant on September 18, 2018. On October 7, 2021, the plaintiff was found guilty of a Class C Misdemeanor, Second-Degree Email Harassment. The plaintiff was sentenced on January 28, 2022 to 454 days in jail, execution suspended after six months, and one year

probation. <u>See</u> Def.'s Motion to Dismiss (ECF No. 37-2)(Exhibit A)(showing that the plaintiff was found guilty of a Class C Misdemeanor, Second-Degree Email Harassment and was sentenced on January 28, 2022 to 454 days in jail, execution suspended after six months, and one year probation).

During the course of the investigation related to the February 6, 2019 Arrest, defendant Grasso applied for and obtained a search warrant pursuant to which Google delivered to Grasso data related to the plaintiff's email communications (the "January 2020 Seizure"). The plaintiff claims, with respect to the January 2020 Seizure that:

> The defendant, Mark Grasso, and Foti Koskinas, mysteriously received a disk of ALL my emails from July 2018-September 2018 contrary to the wording of the Search and Seizure Warrant (which asked for only emails between James Lawrence and [redacted]). Instead of returning the out of order disk to Google and asking for legal copies of my emails, they eventually handed over this chaotic out of order disk to the States District Attorney thereby further empowering the illegal rummaging through my private affairs thereby violating my 4th Amendment rights.

Second Am. Compl. (ECF No. 36) at 52 ¶ 9.

With respect to the Town of Westport, the plaintiff alleges that "it was the policy and/or custom of the defendant, Town of Westport, to inadequately and/or improperly train, supervise, monitor and/or discipline its officers, staff, agents and employees at all times material hereto, thereby failing to adequately discourage further constitutional violations on the

part of its officers." Id. at 53 ¶ 3. He claims that as a result, the individual defendants made untrue statements in, or omitted material information from, affidavits they submitted in support of the warrants issued in connection with the March 5, 2018 Arrest, the February 6, 2019 Arrest, and the January 2020 Seizure.

The plaintiff alleges that defendant Grasso filed an application for an arrest warrant in October 2018 and then did so again in April 2019. The plaintiff alleges that Grasso claimed that he was applying for the warrant because the plaintiff was allegedly "stalking" his tenant, but that the application for a warrant was "rejected twice by the prosecution." Id. at 36.

## II.  LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (alteration in original) (internal

citation omitted) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 568.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue [on a motion to dismiss] is not whether the plaintiff will prevail, but whether [the plaintiff] is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990)(citing Scheuer, 416 U.S. at 236).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). In addition, the court may also take judicial notice of "public records, including complaints filed in state court." Blue Tree Hotels Inv. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2004).

When considering the sufficiency of the allegations in a pro se complaint, the court applies "less stringent standards than [those applied to] formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996). Furthermore, the court should interpret the plaintiff's complaint "to raise the strongest arguments [it] suggest[s]." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## III. DISCUSSION

For the reasons that follow, the plaintiff's claims are barred by the applicable statute of limitations and/or must be dismissed for failure to state a claim upon which relief can be granted.

A. <u>**First Count: 42 U.S.C § 1983**</u>

   **1. False Arrest**

The plaintiff brings two claims for false arrest in this Count. The first claim is based on the March 5, 2018 Arrest. The plaintiff alleges that defendant Sullivan made "[p]erjurious or recklessly false statements in support of the warrant for the plaintiff, James Lawrence, arrest" and "[o]mitted material information from the affidavit to enhance the contents of the affidavit in support for a conclusion of probable cause." Second Am. Compl. at 51 ¶ 2. He alleges that defendants Sullivan, Wolfe, and Koskinas "[t]urned a blind eye to further exculpatory information and failed to investigate such information prior to seeking the issuance of the arrest warrant." <u>Id.</u>

The second claim is based on the February 6, 2019 Arrest. The plaintiff alleges that defendant Grasso made "[p]erjurious or recklessly false statements in support of not just one but two warrants" for the plaintiff's arrest and "[o]mitted material information from the affidavit to enhance the contents of the affidavit as support for a conclusion of probable cause." <u>Id.</u> at 53 ¶ 5. He alleges that defendants Grasso, Dobson, and Koskinas "[t]urned a blind eye to further exculpatory information and failed to investigate such information prior to seeking the issuance of the arrest warrant" and "[s]aid defendants adopted

the perjurious, or recklessly false statements contained in the affidavit . . . ." Id.

"[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 397, (2007); see also Harvey v. Town of Greenwich, No. 3:17-cv-1417 (SRU), 2019 WL 1440385, at *7 (D. Conn. Mar. 31, 2019)("[A] plaintiff's false arrest claim begins accruing at the time of arrest, or at the time the plaintiff was otherwise held pursuant to legal process, and [courts in this District] do not take into consideration the ultimate disposition of the criminal case.").

"Since Congress did not enact a statute of limitations governing actions brought under § 1983, the courts must borrow a state statute of limitations." Lounsbury v. Jeffries, 25 F.3d 131, 133 (2d Cir. 1994). "The statute to be borrowed is the one that is most appropriate or most analogous, so long as it is not inconsistent with federal law or policy." Id. (citation omitted). In Connecticut, the state statute of limitations that applies to unenumerated personal injury claims is Conn. Gen. Stat. § 52-577; see id. at 134 ("Accordingly, § 52-577 should have been applied to plaintiffs' claims under § 1983."); see also Walker v. Jastremski, 159 F.3d 117, 119 (2d Cir. 1998)

("When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations."). The plaintiff filed this action on December 20, 2022. Therefore, any cause of action for false arrest that accrued prior to December 20, 2019 is time-barred.

In connection with the March 5, 2018 Arrest, "[the plaintiff] did sign an appearance bond and explained that his court date was going to be on March 14, 2018 at 9:00 a.m. in Norwalk Court at 17 Belden Ave, Norwalk, CT." Pl.'s First Resp. (Exhibit A) (ECF No. 40-1) at 7. Thus, this false arrest claim accrued on March 14, 2018.

In connection with the February 6, 2019 Arrest, "[the plaintiff] was given a condition of release and a court date of 2/7/19." Pl.'s First Resp. (Exhibit B) (ECF No. 40-2) at 15. Thus, this false arrest claim accrued on February 7, 2019.

Therefore, both of these false arrest claims are barred by the applicable statute of limitations.

### 2. Malicious Prosecution

The plaintiff brings two claims for malicious prosecution in this Count. The first claim arises out of the March 5, 2018 Arrest, and the plaintiff was cited for a non-criminal infraction in January 2020. The second claim arises out of the February 6, 2019 Arrest, and the plaintiff pled guilty on October 7, 2021.

Claims for malicious prosecution require "[t]he plaintiff to prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003) (quoting Murphy v. Lynn, 118 F.3d 398, 947 (2d Cir. 1997)).

"In accord with the elements of the malicious prosecution tort, a Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him." Thompson v. Clark, 596 U.S. 36, 45 (2022). "A Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction." Id.

"[F]avorable termination in the criminal context means that the charge was abandoned or withdrawn without consideration, that is, withdrawn without . . . a plea bargain." Maesse v. Oliver, No. CIV. 3:06CV1412 at *2 (HBF), 2008 WL 1897738 (D. Conn. Apr. 28, 2008) (ellipsis in original) (internal quotation marks and citation omitted); see id. ("The dismissal of the

criminal charges against [the defendant] was conditioned on his plea to the infraction of creating a public disturbance . . . . This arrangement does not satisfy the requirement of a favorable termination as it was clearly conditioned upon plaintiff's agreement to plead to an infraction.").

Here, the plaintiff's malicious prosecution claims are barred as there was no favorable termination. The plaintiff's malicious prosecution claim related to the March 5, 2018 Arrest did not end in a favorable termination because the plaintiff was cited for an infraction. See Second Am. Compl. at iii. ("[I] eventually pled to a non-criminal $90 infraction in January 2020.").[1]

The plaintiff's malicious prosecution claim related to the February 6, 2019 Arrest did not end in a favorable termination because the plaintiff was found guilty and convicted of harassment. See Def.'s Mot. to Dismiss (Exhibit A).

Therefore, the plaintiff fails to state a claim upon which relief can be granted.

---

[1] In any event, this claim must be dismissed because "[t]he issuance of an infraction ticket for creating a public disturbance cannot constitute the [initiation] of a criminal proceeding with respect to a malicious prosecution claim." Onofrio v. Savoy, No. 3:15-cv-1744(WIG), 2018 U.S. Dist. LEXIS 162448, at *14 (D. Conn. Sep. 24, 2018). As to the March 5, 2018 Arrest, the plaintiff was cited for creating a public disturbance under Conn. Gen. Stat. § 53a-181a. See Pl.'s First Resp. at 10. "Creating a public disturbance is an infraction." Conn. Gen. Stat. § 53a-181a. Since the plaintiff was cited for an infraction, there was no criminal proceeding.

### 3. Unreasonable Search and Seizure

The plaintiff brings a claim based on the January 2020 Seizure.  The plaintiff alleges that defendant Grasso "[s]omehow receives ALL my emails with everyone I communicated with in that time and instead of returning the disk to Google and ask for what the Search Warrant specified, he held these Emails for 1 1/2 years rummaging through what was not authorized all the while not submitting them to myself and the prosecution. By the time I alone forced the hand over the seized emails it had been 15 months since the seizure . . . ." Second Am. Compl. at 26 ¶ 1.

The Fourth Amendment to the U.S. Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. "To achieve its goal, the Warrants Clause requires particularity and forbids overbreadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited to the probable cause on which the warrant is based." In re A Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@Gmail.com Maintained at Premises Controlled by Google, Inc., 33 F. Supp. 3d 386, 389 (S.D.N.Y. 2014) (internal quotation marks and

citations omitted). "As the Supreme Court has repeatedly held, the ultimate touchstone of the Fourth Amendment is reasonableness. Thus, the manner in which the government executes a warrant must comport with the Fourth Amendment's reasonableness standard." Id. at 389-90 (internal quotation marks and citations omitted).

"It is unrealistic to believe that Google or any other email host could be expected to produce the materials responsive to categories listed in a search warrant. First, the burden on Google would be enormous because duplicating [law enforcement's] efforts might require it to examine every email. Second, Google employees would not be able to interpret the significance of particular emails without having been trained in the substance of the investigation." Id. at 394-95 (internal citations omitted); see United States v. Ulbricht, 858 F.3d 71, 100-02 (2d Cir. 2017)("Search warrants covering digital data may contain some ambiguity so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant. . . . {I}t will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a

suspect will store information related to the charged crimes.
Files and documents can easily be given misleading or coded
names, and words that might be expected to occur in pertinent
documents can be encrypted . . ." (cleaned up)); United States
v. Oztemel, No. 3:23-CR-00026 (KAD), 2024 WL 3090251, at *9 (D.
Conn. June 21, 2024)("The mere fact that the Government came
into possession of thousands of irrelevant records when Yahoo
and Apple produced the contents of Defendant's accounts does not
establish unreasonableness, let alone that the Government
flagrantly disregarded the terms of the warrants."); United
States v. Chalavoutis, No. 18-CR-0349S1JSAKT, 2019 WL 6467722,
at *4 (E.D.N.Y. Dec. 2, 2019)("Here, the Court is mindful, and
concerned, that the warrant commanded the email provider to turn
over the contents of all emails associated with the account . .
. . However, such a procedure is consistent with the well-
established law of this Circuit. In the case of electronic
evidence, which typically consists of enormous amounts of
undifferentiated information and documents, courts have
recognized that a search for documents or files responsive to a
warrant cannot possibly be accomplished during an on-site
search." (cleaned up)); United States v. Menendez, No. S2 23-CR-
490 (SHS), 2024 WL 912210, at *11 (S.D.N.Y. Mar. 4, 2024)("Even
so, due to the high volume of relevant electronic documents
normally generated, it is highly impractical, if not impossible,

for law enforcement to conduct a search for electronic documents

on-site and limit its seizure to only relevant documents.").

> Once the government is in possession of such a trove
> of electronic information, "the Fourth Amendment
> requires the government to complete its review, i.e.,
> execute the warrant, within a reasonable period of
> time." United States v. Metter, 860 F. Supp. 2d 205,
> 215 (E.D.N.Y. 2012)). Law enforcement may not seize
> and image electronic data and then retain that data
> with no plans whatsoever to begin review of that data
> to determine whether any irrelevant, personal
> information was improperly seized, but there is no
> established upper limit as to when the government must
> review seized electronic data to determine whether the
> evidence seized falls within the scope of a warrant.
> Id. When assessing what is a reasonable period of
> time, courts have recognized that "the Government has
> a need to retain materials as an investigation unfolds
> for the purpose of retrieving material that is
> authorized by the warrant," as law enforcement may
> need to adjust their search based on information
> uncovered as the investigation proceeds. In re Google
> Account, 33 F. Supp. 3d at 298)(citing United States
> v. Lustyik, 2014 WL 1494019, at *5 (D. Utah April 16,
> 2014)."

Oztemel, 2024 WL 3090251, at *9.

Here, defendant Grasso obtained and served on Google a

valid search warrant for "[a]ll data maintained by Google, Inc.

pertaining to email communications between the GMAIL accounts

identified as: [redacted] and jameslarenaissance@gmail.com, to

include emails stored in the inbox, starred, important, sent,

drafts, trash and notes folder, including photographic

images/movies/video for the time period between 07/01/2018 and

10/01/2018." Pl.'s First Resp. (Exhibit H) (ECF No. 40-8) at 5.

There appear to be two parts to the plaintiff's claim. The plaintiff appears to contend that, because defendant Grasso came into possession of irrelevant emails when Google produced the contents of the plaintiff's account, Grasso was obligated to return the search results to Google and ask Google to give him only email communications between the GMAIL accounts identified in the search warrant. However, as recognized In re A Warrant for All Content, it is unrealistic to believe that Google could have accurately produced the materials responsive to the categories listed in the search warrant. Under these circumstances, it was not unreasonable for the defendant to conduct the review himself.

The plaintiff also appears to contend that the search and seizure were unreasonable because the defendant held the search results for 15 months. In Oztemel the defendant argued that the amount of time the government took to conduct its review rendered the search and seizure unreasonable. The court held

> that the time the Government spent conducting its responsiveness review was reasonable. Two years and nine months, the amount of time that the Government required to sift through the information from the Yahoo Warrant, is within or similar to timeframes approved by courts in this Circuit. See Nejad 436 F. Supp 3d at 735 ("roughly three year[]" period was reasonable "under the circumstances"); United States v. Aguilar, No. 20-CR-00309 (E.D.N.Y. July 7, 2023) ECF No. 160 at 6-8 (finding review of two and a half years to be reasonable in a review involving 170,000 documents and which involved "code words" discovered during the course of the investigation); United States

> v. Zottola, No. 18-CR-609 (HG), 2022 WL 3682222, at *4
> (E.D.N.Y Aug. 25, 2022)(A review lasting
> "approximately three years" did not warrant
> suppression); United States v. Sosa, 379 F. Supp. 3d
> 217, 222 (S.D.N.Y 2019)(delay of fifteen months to
> review the contents of an LG Phone was "within the
> bounds of reason.").

Oztemel, 2024 WL 3090251, at *11.

The plaintiff rests his claim solely on the fact that defendant Grasso held the material produced by Google for 15 months. He alleges no additional facts that would suggest that under the circumstances of this case 15 months was unreasonable, for example, that defendant Grasso no longer had a need to retain the materials because of the way the investigation unfolded, see id. at *9, and in light of Oztemel and the cases cited therein, he has not shown that the delay here was unreasonable per se.

Therefore, the plaintiff fails to state a claim upon which relief can be granted.

## B. Second Count: Connecticut Constitution, Article I, §§ 7 and 9

The plaintiff brings a claim pursuant to "Section 7 and 9 of Article I of the Connecticut Constitution [that] require[s] a truthful and factual showing in the warrant affidavit used to establish probable cause." Second Am. Compl. at 52 ¶ 1. This claim is based on three warrants. Warrant 1 is related to the March 5, 2018 Arrest, Warrant 2 is related to the February 6,

2019 Arrest, and Warrant 3 is related to the January 2020 Seizure.

Article I § 7 of the Connecticut Constitution states that "[p]eople shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." Article I § 9 of the Connecticut Constitution states that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law."

Construed in a light most favorable to the plaintiff, he seeks to bring claims for false arrest based on the March 5, 2018 Arrest and the February 6, 2019 Arrest, and a claim for an unreasonable search and seizure based on the January 2020 Seizure.

### 1. False Arrest

As discussed above, the plaintiff's cause of action based on the March 5, 2018 Arrest accrued on March 14, 2018, and his cause of action based on the February 6, 2019 Arrest accrued on February 7, 2019.

The statute of limitations for both Article 7 and Article 9 of the Connecticut Constitution is Conn. Gen. Stat. § 52-577, which provides that "[n]o action founded upon a tort shall be

brought but within three years from the date of the act or omission complained of." See Spencer v. Connecticut, 560 F. Supp. 2d 153, 158 (D. Conn. 2008)("The Plaintiff alleges the Defendants violated his right under the Fourth Amendment to the U.S. Constitution, and Article I, § 7 of the Constitution of the State of Connecticut to be free from unreasonable searches. Section 52-577 governs claims pursuant to the Connecticut Constitution and state common law."); In re State Police Litig., 888 F. Supp. 1235, 1249 (D. Conn. 1995)(The statute of limitations for the plaintiff's claim under Article I, Section 9 of the Connecticut Constitution is determined by "[s]ection 52-577 [that] governs plaintiff's claims pursuant to the Connecticut Constitution and state common law."); Tagliaferi v. Town of Hamden, No. 3:10 CV 1759 JGM, 2014 WL 129223, at *9 n.12 (D. Conn. Jan. 14, 2014)("It is undisputed that the three year statute of limitations under Conn. Gen. Stat. § 52-577, which is the 'general or residual' state statute of limitations for general torts, applies to plaintiff's Section 1983 claims as well as his claims under the Connecticut Constitution.").

Here, the plaintiff filed his complaint on December 20, 2022. Therefore, any cause of action under the Connecticut Constitution, Article I §§ 7 and 9 that accrued prior to December 20, 2019 is time-barred.

Accordingly, the plaintiff's claims as to Warrant 1 (March 5, 2018 Arrest) and Warrant 2 (February 6, 2019 Arrest) are barred by the applicable statute of limitations.

### 2. Unreasonable Search and Seizure

For the reasons discussed above with respect to the § 1983 claim for unreasonable search and seizure, the plaintiff has failed to allege facts that could show that the January 2020 Seizure was unreasonable. Thus, the plaintiff has failed to state a claim for unreasonable search and seizure in violation of Article I § 7 of the Connecticut Constitution, and his claim as to Warrant 3 is being dismissed.

### C. Third Count: Monell Claim

In the Third Count the plaintiff brings a Monell claim pursuant to 42 U.S.C. § 1983, based on a failure to train, supervise, monitor and discipline the individual defendants. He claims that because of the Town of Westport's actions he was subjected to false arrest, malicious prosecution, and unreasonable search and seizure by individual defendants in violation of the Fourth Amendment.

"Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has

sanctioned, led to an independent constitutional violation."
Segal v. City of New York, 459 F.3d 207, 219 (2006).

For the reasons set forth above, the plaintiff's claims
against the individual defendants for false arrest are barred by
the applicable statute of limitations, and his claims for
malicious prosecution and unreasonable search and seizure must
be dismissed for failure to state a claim upon which relief can
be granted. Consequently, the plaintiff can not bring a claim
for an underlying constitutional violation, which is required
for a Monell claim. Therefore, the Monell claim must be
dismissed.

### D. **Fourth Count: Defamation**

The plaintiff brings a defamation claim against defendant
Sullivan for his "[w]arrant narrative that made its way into the
media concerning the plaintiff James Lawrence, caused injury to
the plaintiff: including permanent injury to his reputation. As
a direct and proximate result of the unlawful acts of the
defendant . . . the plaintiff . . . was caused to suffer the
extreme anguish, distress, embarrassment, and humiliation."
Second Am. Compl. at 54 ¶ 2.

"Defamation is comprised of the torts of libel and slander:
slander is oral defamation and libel is written defamation."
Skakel v. Grace, 5 F. Supp. 3d 199, 206 (D. Conn. 2014). "No
action for libel or slander shall be brought but within two

years from the date of the act complained of." Conn. Gen. Stat. § 52-597. The plaintiff filed this action on December 20, 2022. Therefore, any cause of action for defamation that accrued prior to December 20, 2020 is time-barred.

This defamation claim is based on statements by defendant Sullivan in the application for an arrest warrant related to the March 5, 2018 Arrest. The warrant was signed by a Superior Court Judge on January 12, 2018. <u>See</u> Pl.'s First Resp. (Exhibit Continued Arrest #1 Arrest Warrant) at 10. Thus, this defamation claim accrued no later than January 12, 2018.

Therefore, this claim is barred by the applicable statute of limitations.

### E. **<u>Fifth Count: Defamation</u>**

The plaintiff brings a defamation claim against defendant Grasso for his "[i]nitial paragraph warrant narrative . . . [that] was not only completely irrelevant to arresting charge Second Degree Harassment but made with actual knowledge that it was false or with reckless disregard of whether they were false [and] Grasso's warrant narrative . . . that is in the hands of media today and still accessible via FOIA [that] caused injury to the plaintiff: including permanent injury to his reputation." Second Am. Compl. at 55 ¶¶ 1 and 2.

As stated above, a claim for defamation must be brought within two years from the date of the act complained of, <u>see</u>

Conn. Gen. Stat. § 52-597, and any cause of action for defamation that accrued prior to December 20, 2020 is time-barred.

This defamation claim is based on statements by defendant Grasso in the application for an arrest warrant related to the February 6, 2019 Arrest. The arrest warrant was signed by a Superior Court Judge on November 15, 2018. <u>See</u> Pl.'s First Resp. (Exhibit Continued Arrest #2 Arrest Warrant) (ECF No. 40-2) at 18. Thus, this defamation claim accrued no later than November 15, 2018.

Therefore, this defamation claim is barred by the applicable statute of limitations.

### F. <u>Sixth Count: Negligent Infliction of Emotional Distress</u>

The plaintiff brings a claim for negligent infliction of emotional distress against defendants Sullivan, Wolf, Grasso, Dobson, and Koskinas. This claim is based on the March 5, 2018 Arrest, the February 6, 2019 Arrest, and the January 2020 Seizure.

#### 1. **March 5, 2018 Arrest and February 6, 2019 Arrest**

The statute of limitations for negligent infliction of emotional distress is two years. "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the

injury is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ." Conn. Gen. Stat. § 52-584. The plaintiff filed this action on December 20, 2022. Therefore, any cause of action for negligent infliction of emotional distress that accrued prior to December 20, 2020 is time-barred.

To the extent this claim is based on the March 5, 2018 Arrest or the February 6, 2019 Arrest, it accrued on March 14, 2018 or February 7, 2019 for the reasons discussed above and consequently, is barred by the applicable statute of limitations.

### 2. January 2020 Seizure

Drawing all inferences in favor of the plaintiff, to the extent this claim is based on the January 2020 Seizure, it is not time-barred because of the 15-month period during which defendant Grasso held the emails. However, it must nonetheless be dismissed because the plaintiff has failed to state a claim upon which relief can be granted.

"To prevail on a claim of negligent infliction of distress, the plaintiff is required to prove that (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the

defendant's conduct was the cause of the plaintiff's distress." Hall v. Bergman, 296 Conn. 169, 183 n.8 (2010).

With respect to the first element, "[t]he plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." Larobina v. McDonald, 274 Conn. 394, 410 (2005). "If such distress were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the distress were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." Id.

In Hamilton v. City of New Haven, 213 F. Supp. 2d 125, 134 (D. Conn. 2002), the court concluded that "[n]ot only was the entry and detention made pursuant to a valid warrant, but the defendant officers had probable cause to believe that an armed individual . . . may await them inside. As a result, the defendant officers . . . could not be expected to know that their actions would lead the occupant of the premises to experience distress of such a magnitude that it might result in illness or bodily harm." Here, defendant Grasso had a valid

search warrant for the plaintiff's emails, which was issued because probable cause had been established to the satisfaction of a Superior Court Judge. Thus, the distress experienced by the plaintiff was unreasonable in light of defendant Grasso's conduct, and the plaintiff has not alleged facts that can establish the first element.

As to the fourth element, that the conduct at issue was the cause of severe emotional distress, the plaintiff makes only one allegation that relates to the January 2020 Seizure. The plaintiff alleges that "[b]ecause of this known Officer Grasso investigatory misconduct . . . I was given on January 28, 2022, the maximum 90 days in prison despite the Presentencing Investigation (PSI) advocating ONLY probation for my first-time alleged offense, thereby causing much trauma." Second Am. Compl. at 49. This allegation makes clear that the cause of the emotional distress at issue, i.e., trauma, was not the January 2020 Seizure itself but, rather, the time the plaintiff spent in jail as a consequence of his guilty plea. Thus, the plaintiff has also failed to allege facts that could establish the fourth element.[2]

---

[2] As discussed below with respect to the Seventh Count, the plaintiff also fails to allege facts, as opposed making conclusory allegations, that could establish the severe emotional distress that is required by the third element of a claim for negligent infliction of emotional distress.

Accordingly, to the extent it is based on the January 2020 Seizure, the plaintiff fails to state a claim upon which relief can be granted.

### G. Seventh Count: Intentional Infliction for Emotional Distress

The plaintiff brings a claim for intentional infliction of emotional distress against defendants Sullivan, Wolf, Grasso, Dobson, and Koskinas. This claim is based on the March 5, 2018 Arrest, the February 6, 2019 Arrest, and the January 2020 Seizure.

#### 1. March 5, 2018 Arrest and February 6, 2019 Arrest

The statute of limitations for a claim for intentional infliction of emotional distress is three years. See Conn. Gen. Stat. § 52-577; Watts v. Chittenden, 301 Conn. 575, 596-98 (2011)(§ 52-577 applies to intentional infliction of emotional distress claims); Cecchini v. Schenck, No. 3:14-CV-1704 (MPS), 2017 WL 902849, at *17 (D. Conn. Mar. 7, 2017)("Tort actions in Connecticut have a three year statute of limitations.").

The plaintiff filed this action on December 20, 2022. Therefore, any cause of action for intentional infliction of emotional distress that accrued prior to December 20, 2019 is time-barred.

For the reasons discussed above, to the extent the plaintiff's claim for intentional infliction of emotional

distress is based on the March 5, 2018 Arrest, it accrued on March 14, 2018, and to the extent it is based on the February 6, 2019 Arrest, it accrued on February 7, 2019. Consequently, to the extent this claim is based on either of these Arrests, it is barred by the applicable statute of limitations.

### 2. January 2020 Seizure

To set out a claim for intentional infliction of emotional distress, the plaintiff must prove the following elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Bd. of Educ. of Town of Stonington, 254 Conn. 205, 210 (2000).

As to the second element, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Jones v. Acuren Inspection Inc., No. 3:23-CV-1054 (VAB), 2024 WL 1141932, at *7 (D. Conn. Mar. 15, 2024). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

"Where an intentional infliction of emotional distress claim is based on a plaintiff's arrest, and probable cause exists for that arrest, an intentional infliction of emotional distress claim may not stand: enforcement of the law can hardly be called conduct beyond the acceptable bounds of decent society." Castro v. Narcisse, No. 3:12-CV-01535 VLB, 2015 WL 2342401, at *16 (D. Conn. May 14, 2015) (cleaned up); see also Moreno v. City of New Haven Dep't of Police Serv., 604 F. Supp. 2d 364, 376 (D. Conn. March 9, 2009)("Since the . . . record shows as a matter of law that Defendants' actions were lawfully taken with probable cause, and Plaintiff proffers no evidence as to the manner in which Defendants effectuated the otherwise lawful arrest or prosecution, there is no evidence . . . [to] conclude that Defendants' conduct was beyond all bounds of decency . . . .")); Blalock v. Bender, 2006 WL 1582217, at *7 (D. Conn. June 1, 2006)("Even assuming that the first and third prongs have been met in this case—which is far from clear—it has not been shown that Defendant's conduct was either extreme or outrageous. To the contrary, Defendant has shown that he had probable cause to arrest Plaintiff.").

As discussed above, Grasso had a valid search warrant for the plaintiff's emails, which was issued because probable cause had been established to the satisfaction of a Superior Court Judge. As also discussed above, it was not unreasonable for defendant

Grasso to conduct the search himself, nor was it unreasonable for him to hold the material for 15 months. Thus, the plaintiff has not alleged facts that could establish the second element.

As to the fourth element, "Connecticut courts have held that emotional distress is severe when it reaches a level which no reasonable person could be expected to endure." Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 175-76 (D. Conn. 2003). "The Connecticut Appellate Courts have never adopted a bright-line test for determining what kinds of mental distress are sufficiently serious to sustain a claim of IIED, but the trial courts have consistently used the standard set forth in the Restatement." Stubbs v. Gerken, No. 3:21CV01525(SALM), 2022 WL 4585296, at *17 (D. Conn. Sept. 29, 2022) (cleaned up). "Comment (j) to the Restatement (Second) of Torts, § 46, provides in relevant part: [t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Emotional distress is unlikely to be considered severe in the absence of treatment, medical, psychological, or otherwise." Id. (second alteration in original).

"Merely alleging extreme emotional distress without supporting factual allegations is legally insufficient to support a claim of intentional infliction of emotional distress.

The supporting factual allegations must be more than conclusory statements." Zadrowski v. Town of Plainville, 2013 WL 5435491, at *12 (D. Conn. Sept. 30, 2013)(internal quotation marks and citations omitted).

Here the plaintiff merely alleges in a conclusory fashion that "[t]he aforesaid Blue Wall of Silence conduct on the part of the individual defendants . . . constitute years of intentional infliction of emotional distress in that the defendants' actions . . . did result in severe mental, physical and emotional distress." Second Am. Compl. at 55. Thus, the plaintiff has failed to allege facts that could establish the fourth element.

Accordingly, to the extent it is based on the January 2020 Seizure, the plaintiff fails to state a claim upon which relief can be granted.

### H. Eighth Count: Indemnification

The plaintiff brings a claim for indemnification, pursuant to Connecticut General Statutes § 7-101a(d) and § 7-465(a), against the "Town of Westport, for the carelessness and negligence and outright corruption of the individual defendants." Second Am. Compl. at 56 ¶ 3. This claim is based on the March 5, 2018 Arrest, the February 6, 2019 Arrest, and the January 2020 Seizure.

Connecticut General Statutes § 7-101(a)(d) "[d]oes not provide plaintiffs with a direct right of action against a municipality." Gillespie v. Ancona, No. 3:97-CV-2045 (EBB), 1999 WL 66538, at *5 (D. Conn. Feb. 4, 1999). "Section 7-101a requires that municipalities indemnify municipal employees for negligent actions occurring in the scope of employment. However, the statute does not provide for a cause of action against the municipality itself." Edwards v. City of Hartford, No. 3:13-cv-878 (WWE), 2015 U.S. Dist. LEXIS 158262, at *18 (D. Conn. Nov. 23, 2015).

Connecticut General Statutes § 7-465(a) provides:

> Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefore arose and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued.

"Section 7-465 allows an action for indemnification against a municipality in conjunction with a common-law action against a municipal employee." <u>Gaudino v. Town of Hartford</u>, 87 Conn. App. 353, 356 (2005). "To invoke § 7-465, the plaintiffs first must allege in a separate count and prove the employee's duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the town's liability by indemnification." <u>Altfeter v. Borough of Naugatuck</u>, 53 Conn. App. 791, 799 (1999) (cleaned up).

Here the plaintiff has not successfully pled a cause of action against an employee or agent of the municipality, the Town of Westport.

Therefore, this claim must be dismissed for failure to state a claim upon relief can be granted.

**IV.  CONCLUSION**

For the reasons set forth above, the defendants' Motion to Dismiss (ECF No. 37) is hereby GRANTED.

The Clerk shall enter a judgment accordingly and close this case.

It is so ordered.

Dated this 18th day of July 2024, at Hartford, Connecticut.

/s/
_____
Alvin W. Thompson
United States District Judge